IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

PASS & SEYMOUR, INC.,

               Plaintiff,

      v.                              Civil Action No.
                                      5:07-CV-00945 (NAM/DEP)

HUBBELL INCORPORATED,

               Defendant.

_____

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF:

BOND, SCHOENECK LAW FIRM       EDWARD R. CONAN, ESQ.
One Lincoln Center                  DAVID L. NOCILLY, ESQ.
Syracuse, NY 13202

GOODWIN, PROCTER LAW FIRM     ANDREW N. STEIN, ESQ.
620 Eighth Avenue
The New York Times Building
New York, NY 10018-1405

FOR DEFENDANT:

COSTELLO, COONEY LAW FIRM      EDWARD G. MELVIN, ESQ.
205 South Salina Street
4th Floor
Syracuse, NY 13202

ROYLANCE, ABRAMS LAW FIRM   ALFRED N. GOODMAN, ESQ.
1300 19th Street NW              KEVIN M. BARNER, ESQ.
Suite 600
Washington, DC 20036

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE
_____

_____ DECISION AND ORDER

      Currently pending before the court in connection with this patent infringement suit is a discovery dispute which calls upon the court to determine whether, in response to seventy-two separate document discovery requests, the plaintiff's production in digital format of 405,367 pages of documents, apportioned among 202 unlabelled folders and which through application of litigation support software can be made text searchable, but is otherwise neither organized to correlate to the document demands nor in any fashion indexed or labeled to reflect how they are maintained in the ordinary course of plaintiff's business, satisfies the responding party's obligations under Rule 34 of the Federal Rules of Civil Procedure.  Contending that such a response is not consonant with either the letter or spirit of the governing rule, defendant seeks an order compelling the plaintiff to organize the documents produced and to disclose which are responsive to each of the seventy-two document

2

demands.  In response, plaintiff argues it has properly invoked its right to produce the documents as they are maintained, and is neither required to further organize the documents nor obligated to provide an index of the materials produced.

While the governing rule entrusts the decision of which of the two specified methods of responding to a document demand will be selected, a litigant choosing to avoid production in a format under which the requested materials are organized to correspond to specific document demands must produce them as they are kept in the usual course of business.  Since plaintiff has neither carried its burden of proving that the documents now at issue were produced in the manner in which they are maintained, nor has it otherwise produced the information necessary to make the production useful to the defendant, I will grant defendant's motion, in part, and direct that plaintiff provide the defendant with further information regarding its document production.

I.      BACKGROUND

Plaintiff Pass & Seymour, Inc. ("P&S") commenced this action on September 12, 2007.  Dkt. No. 1.  Plaintiff's complaint alleges infringement by defendant Hubbell Incorporated ("Hubbell") of fifteen

3

patents held by P&S, based upon Hubbell's manufacture and sale of allegedly infringing ground fault circuit interrupters.  *Id.*  Hubbell has since appeared in the action, generally denying the material allegations of plaintiff's complaint, asserting various affirmative defenses, and additionally counterclaiming seeking declarations of patent invalidity and noninfringement.  Dkt. No. 6.

Following the joinder of issue, Hubbell served upon P&S both a comprehensive set of interrogatories and a document discovery demand, the latter of which sought the production of documents falling into seventy-two wide-ranging and broadly worded designated categories.  After serving initial responses and objections to Hubbell's document demands, P&S produced, in electronic format, the equivalent of 405,367 pages of documents – a quantity estimated to be capable of filling in excess of 80 bankers boxes if produced in hard copy format.  The documents produced, while loaded onto a computer hard drive for ease of conversion to text searchable format, were only loosely organized, having been placed in 202 unlabelled files, with no corresponding index provided.

After voicing objections to the production, Hubbell took steps to engage P&S in a dialogue in an effort to reach a mutually acceptable

compromise regarding the issue.   With the failure of those efforts,

Hubbell turned to the court for assistance.[1]

II.    DISCUSSION

The issue now before the court is governed in the first instance by

Rule 34(b)(2) of the Federal Rules of Civil Procedure which provides, in

relevant part, that unless otherwise stipulated or ordered a party

responding to a demand by a federal court litigant for the production of

documents "must produce [them] as they are kept in the usual course of

business or must organize and label them to correspond to the categories

in the request; . . . ."  Fed. R. Civ. P. 34(b)(2)(E)(i); *see Johnson v. Kraft*

*Foods North America, Inc.*, 236 F.R.D. 535, 540 (D. Kan. 2006).  As can

be seen, while the rule contemplates that a party may make the requested

production in traditional format, organized to associate the documents

with the party's requests to which they respond, at the responding party's

option it alternatively permits the production of responding documents

within the parties' possession, custody or control as they are customarily

maintained, without providing further guidance regarding this alternative

---

[1]    In addition to raising the issue regarding plaintiff's document production, defendant has sought to elicit the court's assistance to cure perceived deficiencies in certain of plaintiff's interrogatory responses.  That issue was separately decided during a recent hearing held to address the pending discovery disputes.

protocol.  *Cardenas v. Dorel Juvenile Group, Inc.,* 230 F.R.D. 611, 618 (D. Kan. 2005) (noting that the rule does not further explain the term "usual course of business").

The provision authorizing production in accordance with this second option was born out of the disfavor shown by courts to the dumping of massive quantities of documents, with no indexing or readily apparent organization, in response to a document request from an adversary, *see In re: Sulfuric Acid Antitrust Litig.,* 231 F.R.D. 351, 363 (N.D. Ill. 2005), to prevent parties from "deliberately . . . mix[ing] critical documents with others in the hope of obscuring significance."  *See* Advisory Committee Note for 1980 Amendment to Rule 34 (quoting report of the Special Committee for the Study of Discovery Abuse, Section of Litigation of the American Bar Association) (1977)); *see also Johnson,* 236 F.R.D. at 540. Addressing the underlying rationale for the added option, one court has noted that

> [c]learly, the underlying assumption [in permitting the alternative of producing documents as they are maintained] was that production of records as kept in the usual course of business ordinarily will make their significance pellucid.  That is the overarching purpose of the rule.

*CooperVision, Inc. v. CIBA Vision Corp.,* No. 2:06 CV 149, 2007 WL

2264848, at \*4 (E.D. Tex. Aug. 6, 2007).

Under the provisions of Rule 34(b)(2) a responding party clearly controls the manner in which production will occur, and specifically which of the two prescribed methods of production will be employed. *MGP Ingredients, Inc. v. Mars, Inc.*, No. 06-2318, 2007 WL 3010343, at \*3 (D. Kan. Oct. 15, 2007). A party selecting the alternative method of production bears the burden of demonstrating that the documents made available were in fact produced consistent with that mandate. *Johnson,* 236 F.R.D. at 540-41; *Cardenas,* 230 F.R.D. at 618. To carry this burden, a party must do more than merely represent to the court and the requesting party that the documents have been produced as they are maintained. *See Johnson,* 236 F.R.D. at 540-41 and *Cardenas*, 230 F.R.D. at 618 (both holding that the mere assertion that documents were produced as kept in the ordinary course of business is insufficient to fulfill requirements of the governing rule); *see also GP Indus., LLC v. Bachmon,* No. 8:06CV50, 2008 WL 1733606, at \*3 (D. Neb. Apr. 10, 2008) (citing *Cardenas*).

P&S contends that it has properly exercised its option of producing the requested documents in the manner in which they are ordinarily kept,

presumably meaning in the order in which they were stored and retrieved. In support of this assertion, P&S has offered only an attorney's statement to the effect that the documents produced have been assembled as they have been maintained in the usual course of the company's business, without further elaboration.  Before Hubbell's motion was filed, P&S had provided literally no additional information regarding its search for the documents, including where the documents produced were maintained, whether they came from a single source or file or from multiple points of origin, the identity of the record custodians, and the manner in which they were organized.  *Cf. Johnson,* 236 F.R.D. at 540-41 (concluding that without this information the responding party had failed to carry its burden under *Cardenas*).

To its credit, since the filing of the motion P&S has now identified, by Bates number ranges, the custodians of the respective records produced. No further information is provided, however, and many of the individuals identified are not known to Hubbell.  In the court's view, even with the addition of this information P&S has fallen far short of satisfying its burden of demonstrating that the requirements of Rule 34(b)(2) have been met. *See Google, Inc. v. American Blind & Wallpaper Factory, Inc.,* No. 03-CV-

5340, 2006 WL 5349265, at *3. (N.D. Cal. Feb. 8, 2006) (indicating that a party's unsupported statement that files were produced as they were kept in the ordinary course of business fails to fulfill the requirements of Rule 34(b)).

In addition to failing to fulfill its burden of proving that the documents produced were organized as they are regularly maintained, P&S has provided little detail regarding how it routinely organizes the documents, arguing that Rule 34(b)(2) imposes no corresponding duty to provide information that reveals how they are maintained in the usual course of business.   While there may be some decisions which could be regarded as moderately supportive of this view, *see, e.g.*, *In re Lorazepam & Clorazepate Antitrust Litig.,* 300 F. Supp. 2d 43 (D.D.C. 2004), the overwhelming weight of authority counsels that more in the way of organization is required in order to make the document production meaningful, and thus proper.  *See, e.g., CooperVision, Inc.*, 2007 WL 2264848, at *5 ("[S]imply placing documents in boxes and making them available does not conform to the rule."); *Johnson,* 236 F.R.D. at 541 (where a producing party provided no information regarding the manner in which the documents were produced, including where they were

9

maintained, the identity of the custodian, and whether they were from a single source or multiple sources of files, the producing party failed to carry its burden of demonstrating that the documents were produced as they were maintained); *Wagner v. Dryvit Sys., Inc.,* 208 F.R.D. 606, 610-11 (D. Neb. 2001) ("[P]roducing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34.") (citations omitted); *Stiller v. Arnold*, 167 F.R.D. 68, 71 (N.D. Ind. 1996) ("Producing 7,000 pages of documents in no apparent order does not comply with a party's obligation under Rule 34(b)."); *T.N. Taube Corp. v. Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 456 (W.D.N.C. 1991) (in response to production of 789 documents, bates-stamped and provided in a box with no discernable order, the court expressed doubt that production was made as the documents were kept in the usual course of business, and thus directed that the documents be organized and labeled to indicate the specific document demand to which each related); *Scripps Clinic & Research Found. v. Baxter Travenol Laboratories, Inc.,* No. 87-140-CMW, 1988 WL 70013, at * 3-4 (D. Del. June 21, 1988) (production of 45,000 documents "arranged in bundles within each of the fifteen boxes, most of the bundles contain[ing] no designation as to the origin of

the file, the name of the file, or whether the bundle contained documents from multiple files" deemed insufficient to satisfy the requirements of Rule 34(b)).

P&S protests that acceptance of Hubbell's argument in essence effectively eliminates the option of producing documents as they are ordinarily maintained despite the fact that this method is explicitly permitted by Rule 34(b).  This not the case.  I fundamentally agree that a party responding to a document discovery request may, at its option, make production of the documents as they are ordinarily maintained.  The present controversy, while recognizing this alternative method, centers upon what is meant by the portion of the rule permitting production of documents "as they are ordinarily maintained."  As its plain language reflects, the rule contemplates that a party selecting this option disclose information to the requesting party regarding how the documents are organized in the party's ordinary course of business.

The facts of this case provide ample illustration of why plaintiff's production does not comply with the requirement.  As has previously been noted, the more than 400,000 documents produced by P&S were placed in 220 unlabelled files and produced in that format, initially without

explanation.  If P&S could sustain its burden of showing that in fact the documents produced are maintained in that same fashion – that is, contained within the same 220 unlabelled folders – either digitally or in hard copy, then it clearly would have met the requirement of production of the documents as they are ordinarily maintained in the course of its business.  The court doubts, however, that this is the case, and P&S has not argued otherwise.  P&S has therefore failed to fulfill its obligation to produce the documents as they are maintained in the ordinary course of its business.  *Cf. United States v. O'Keefe*, 537 F. Supp. 2d 14, 19 (D.D.C. 2008) (applying Rule 34(b) by analogy in a criminal setting, district court held that documents removed from their original folders and copied were not produced in the manner in which the originals were ordinarily kept).

The most obvious means of complying with the requirement of Rule 34(b) to produce documents as they are kept in the usual course of business is to permit the requesting party to inspect the documents where they are maintained, and in the manner in which they are organized by the producing party.[2]  It logically follows that when production occurs by

_____

[2]     It should be noted that if the system utilized by the producing party to organize and maintain the documents is so deficient as to undermine the usefulness of

means other than permitting the demanding party access to the original records as they are organized and maintained by the responding party, such as by instead choosing to copy the documents and produce the duplicates, they must be organized in such a way that the system utilized by the producing party is replicated; in other words, the documents should be produced, organized and labeled and, if appropriate, indexed just as they are maintained by the producing party. *See, e.g., Johnson*, 236 F.R.D. at 540-41.

The production by P&S of 405,367 pages of documents devoid of any index or table to help illuminate the organizational regime utilized by P&S falls short of meeting the obligations imposed under Rule 34(b)(2). While some measure of explanation regarding the documents produced is required, neither the rule itself nor the cases surveyed reveal any bright line guidance concerning the level of detail required when a producing

---

production under this portion of the rule, the obligations imposed under Rule 34 may not have been met even where this procedure is followed. *See Kozlowski v. Sears, Roebuck & Co.,* 73 F.R.D. 73, 76 (D. Mass. 1976) (a party "may not excuse itself from compliance of Rule 34 . . . by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition"); *see also Natural Resources Defense Council, Inc. v. Fox*, No. 95 CIV. 8424, 1996 WL 497024, at *5 n.3 (S.D.N.Y. Aug. 30, 1996) (without a showing that the filing system utilized by the producing party is so disorganized that it is unreasonable for the receiving party to make its own review, there is no basis for disturbing a party's election under Rule 34(b)(2)(E)(i)).

party has opted to produce documents as they are ordinarily maintained. Many courts addressing this issue have adopted a flexible approach, finding that the producing party can comply with the spirit of the "usual course of business" requirement by insuring that the records are segmented in easily identifiable categories.  *See Estate of Townes Van Zandt v. Eggers,* No. 05 Civ. 10661, 2007 WL 3145097, at *2 (S.D.N.Y. Oct. 26, 2007) (plaintiffs complied with spirit and specifications of Rule 34 when they provided defendant with documents as they were kept in the normal course of business, categorized by subject matter such as "royalty reports" and "copyright ownership rights"); *Morgan v. City of New York*, No. 00 Civ. 9172, 2002 WL 1808233, at *4 (S.D.N.Y. Aug. 6, 2002) (defendants produced 6,305 documents identified by the prefix to the Bates stamp number and grouped in specific and readily identifiable categories in which they were kept in the usual course of business). Some courts, on the other hand, have taken a less relaxed position, holding that the documents must be precisely produced as they are maintained in the "usual course of business" no matter how easily identifiable the information may be.  *See Google, Inc.,* 2006 WL 5349265, at *4. (court ruled that files were not produced as maintained in the usual

14

course of business even though the files contained both colored and alphabetized pages to assist defendant in navigating the documents).

P&S defends its initial production, asserting that particularly in view of the potential text searchable feature of its production format it was under no obligation to disclose additional information regarding how the records being produced are stored, and were retrieved.  The cases cited by P&S in defense of its position are in the most part inapposite.  In *Zakre v. Norddeutsche Landesbank Girozentrale,* for example, the production of e-mails in electronic and text searchable format was approved by the court because they were produced "in as close a form as possible as they are kept in the usual course of business."  No. 03-Civ 0257, 2004 WL 764895, at *1 (S.D.N.Y. Apr. 9, 2004).  At issue in *Zakre,* however, were e-mails which one would expect would not be maintained in a file cabinet organized within a file folder under a particular heading, and the information necessary to interpret and make use of an e-mail is normally readily apparent from the heading, including information regarding the author, sender, and recipients.  The situation with regard to the documents produced by P&S, therefore, is distinctly different from that presented in *Zakre.*

Another case from which P&S draws considerable comfort is *Morgan v. City of New York,* No. 00-Civ.-9172, 2002 WL 1808233 (S.D.N.Y. Aug. 6, 2002).  In *Morgan,* the plaintiff complained that in producing 6,000 documents and agreeing to make others available for inspection, in response to 680 document demands, the defendants did not comply with their obligations under Rule 34(b).  *Id.* at *4.  While rejecting that argument and the contention that the documents produced should have been matched with specific requests, the court noted defendants' representation that the majority of the documents produced were "grouped in specific and readily identifiable categories in which they were kept in the usual course of business[,]" elaborating that the documents were produced in groupings corresponding to the system by which they were maintained.  *Id.*  As such, that case is of limited if any value in defending plaintiff's production.

P&S also relies heavily upon the decision in *MGP Ingredients, Inc. v. Mars, Inc.,* No. 06-2318, 2007 WL 3010343 (D. Kan. Oct. 15, 2007) from Magistrate Judge David J. Waxse, who also authored earlier decisions in *Cardenas and Johnson*.  It is undeniably true that in *MGP Ingredients* Judge Waxse stated that under the controlling provision of

Rule 34(b), "[i]f the producing party produces documents in the order in which they are kept in the usual course of business, the Rule imposes no duty to organize and label the documents, provide an index of the documents produced, or correlate the documents to the particular request to which they are responsive." *Id.* at *3.  I do not interpret this language, however, particularly in view of *Johnson and Cardenas*, to suggest that the rule does not require the responding party to provide any information regarding documents produced as they are ordinarily maintained. Significantly, the producing party in *MGP Ingredients* had set forth in a letter, for each set of documents produced, a chart identifying the range of Bates numbers, the source of the documents, including the name of the person from whom they were obtained, an indication of whether documents were maintained in hard copy or electronic format, and which particular defendant had produced the documents.  *Id.* at *1.

As the foregoing reflects, a party who in response to a discovery demand has chosen to produce documents as they are ordinarily maintained must do just that – produce the documents organized as they are maintained in the ordinary course of producing party's business, with at least some modicum of information regarding how they are ordinarily

17

kept in order to allow the requesting party to make meaningful use of the

documents.  At a minimum, that means that the disclosing party should

provide information about each document which ideally would include, in

some fashion, the identity of the custodian or person from whom the

documents were obtained, an indication of whether they are retained in

hard copy or digital format, assurance that the documents have been

produced in the order in which they are maintained, and a general

description of the filing system from which they were recovered.

Plaintiff's initial production, while capable of being converted into

text searchable format, contained no organizational information regarding

the documents produced.  Admirably, since this dispute came to a head

P&S has made strides to provide some information regarding the

documents produced, identifying the sources of the documents produced

by Bates number ranges.  While this represents a step toward compliance

with Rule 34(b)(2), it does not fully satisfy the rule.  *See Residential*

*Constructors, LLC v. ACE Prop. and Cas. Ins. Co.*, No. 2:05-CV-01318,

2006 WL 1582122, at *1-2 (D. Nev. June 5, 2006) (finding that forty-one

boxes of imaged documents in continuous order with no index or table of

contents, although text searchable, did not comply with plaintiff's

obligation under Rule 34).  Accordingly, I will require further detail from

P&S in order to make its production of over 400,000 pages of documents

meaningful.  *See Oklahoma ex rel Edmonson v. Tyson Foods, Inc.,* No.

05CV329, 2007 WL 1498973, at *4 (N.D.Okla. May 17, 2007) (requiring

producing party to create a complete index which responded to each

motion to produce); *see also Sparton Corp. v. United States*, 77 Fed.Cl.

10, 16 (Fed.Cl. 2007) (asserting that the producing party may not provide

documents in a "mass of undifferentiated, unlabeled documents" but

instead must provide them in some "organized, indexed fashion").

III.    <u>SUMMARY AND CONCLUSION</u>

       The discovery demands served by Hubbell are undeniably both

aggressive and broad in scope, seeking documents falling into seventy-

two categories.  In responding to those demands, P&S has properly opted

not to format its responsive production by associating each of the 400,000

documents produced to those demands.  While professing to having

produced the documents as maintained in the ordinary course of

business, however, P&S has offered little information regarding the

manner in which they are internally organized and maintained.

       The court appreciates the burden associated with attempting to

organize and collate 405,367 pages of documents, and further recognizes with the advent and increased use of digitized information and litigation support software, large quantities of documents can be rendered both manageable and text searchable.  Accordingly, it can be argued that less by way of organizational information should be required than historically may have been the case in order to permit informed use of documents produced by an opponent.  After weighing these considerations, I conclude that it would be both unfair and unduly onerous to require P&S to organize the documents produced to correspond to the seventy-two document requests made by Hubbell, as defendant now requests. Nonetheless, finding that plaintiff has failed to carry its burden to show compliance with the requirements of Rule 34(b)(2), the court will order P&S to provide some additional information regarding the organization of those documents in the ordinary course of its business.  Accordingly, it is hereby

ORDERED as follows:

1)      Defendant's motion to compel discovery (Dkt. No. 27) is GRANTED in part, and plaintiff's cross-motion for a protective order (Dkt. No. 29) is hereby DENIED.

2)      Within thirty days of the date of this order plaintiff shall produce to defendant an index of the documents produced, revealing the custodian, location and a general description of the filing system under which each document was maintained in the ordinary course of plaintiff's business, further including an indication of whether the document is kept in digital format, hard copy, or both.

3)      No costs or attorney's fees are awarded to any party in connection with the pending cross-motions.

David E. Peebles
U.S. Magistrate Judge

Dated:      September 12, 2008
            Syracuse, NY

21